the actual reason for the company's actions was racial discrimination.  There is in this record, however,  *no* indication whatever that the defendant's reliance on the evaluations in question was other than legitimate. Nor is there any reason to disbelieve the company's assertion that the fifth and last candidate had management experience with the company that was superior to Hopson's.  Again, it was Hopson's burden to prove that the business reasons cited by the defendant for its decisions were pretextual, not the other way around.

As the majority concedes, our circuit precedent recognizes that "Title VII does not diminish traditional management prerogatives in choosing among qualified candidates." *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987).  In my judgment, it was the exercise of that prerogative that led to the defendant's actions in this case.  Certainly, I can see no genuine issue of material fact that would lead to the opposite conclusion.  Unlike the majority, my credulity is not "strained" by this record.  There was obviously heated competition for the positions in question -- in no case were there fewer than 15 applicants for promotion, and in one case there were 38 applicants. Undoubtedly, many of these applicants were at least minimally qualified for promotion, but only one could be chosen in each instance, and it was the company's prerogative to determine which among those qualified to promote.  Hopson had been the beneficiary of at least three such promotions between 1989 and 1997.  Perhaps after some 30 years with the company he had advanced to the limit to which his abilities could carry him, as we all do at some point in our careers.  That conclusion is as sound, based on this record, as the majority's speculation that his failure to advance farther was somehow the product of unlawful discrimination.

For these reasons, I would affirm the judgment of the district court.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0339P (6th Cir.)
File Name:  02a0339p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

EDDIE HOPSON,
            *Plaintiff-Appellant,*

            *v.*                                        No. 01-1192

DAIMLERCHRYSLER
CORPORATION,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-74085—John Corbett O'Meara, District Judge.

Argued:  June 12, 2002

Decided and Filed:  September 30, 2002

Before:  KEITH and DAUGHTREY, Circuit Judges;
            MARBLEY, District Judge.

—————————————————————

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

---

### COUNSEL

**ARGUED:** Jamil Akhtar, AKHTAR & SUCHER, Troy, Michigan, for Appellant. Mark W. McInerney, CLARK HILL PLC, Detroit, Michigan, for Appellee. **ON BRIEF:** Jamil Akhtar, AKHTAR & SUCHER, Troy, Michigan, for Appellant. Mark W. McInerney, Jack VanHoorelbeke, CLARK HILL PLC, Detroit, Michigan, for Appellee.

MARBLEY, D. J., delivered the opinion of the court, in which KEITH, J., joined. DAUGHTREY, J. (pp. 22-24), delivered a separate dissenting opinion.

---

### OPINION

---

ALGENON L. MARBLEY, District Judge. Eddie Hopson, Jr., is a longtime employee of DaimlerChrysler Corporation who has applied unsuccessfully for several open positions within the company, many of which would have been promotions. Believing that he was unable to obtain these jobs because of his race, Hopson filed suit against his employer alleging disparate treatment under Title VII and Michigan law. After limited discovery, DaimlerChrysler filed a motion for summary judgment, in which it conceded that Hopson was able to establish a *prima facie* case, but argued that Hopson had failed to present any evidence that its legitimate, non-discriminatory reason for choosing persons other than Hopson for the positions – the company's determination that other applicants were more qualified than Hopson – was pretextual. The district court agreed, and granted summary judgment in favor of DaimlerChrysler. Hopson now appeals from that order, arguing that the district court erred in its conclusion that he failed to raise a genuine issue of material fact with respect to whether DaimlerChrysler's legitimate, non-discriminatory reason for selecting other applicants for certain open positions was pretextual. The district court properly

not reveal the basis for his opinion" that "Hopson's race was a factor in the company's decision to deny him the promotions for which he applied." For this reason, Slater's opinion may well be inadmissible for lack of a foundation, an outcome that, in my judgment, severely undercuts the majority's later determination that Slater's apparently groundless opinion nevertheless "constitute[s] circumstantial evidence of discrimination."

The district court also discounted the plaintiff's statistical evidence, finding that the disparity between the percentage of African-American security guards and that of African-American managers could not be used to establish pretext, because there was no evidence "to show the number of African American applicants for those [management] jobs or their qualifications." The fact that the statistical evidence was thus legally "incomplete," as the district court correctly described it, is simply not addressed by the majority, although the statistics are cited as a basis for concluding that the defendant's proffered reason for its actions was pretextual.

Hence, I cannot agree with the majority's decision to send the case to a jury based merely on Slater's opinion, which may be wholly speculative, and on the questionable statistical testimony offered in this case. In addition, I find another compelling basis for concluding that summary judgment was appropriate. In four of the five actions taken by the defendant that are in contention on appeal, the defendant determined that an applicant other than Hopson was better qualified for the position in question not only on the basis of academic credentials and experience within the company, but also on the basis of annual performance evaluations that were superior to the plaintiff's. The majority indicates that testimony regarding the evaluations should be discounted because, in each case, the defendant "failed to indicate the extent to which [the applicant's] evaluations were better than Hopson's." But this ruling turns the *McDonnell Douglas* analysis on its head. That analysis clearly and unequivocally places the burden on the plaintiff to prove that the performance evaluations were being used as a pretext when

---

**DISSENT**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge, dissenting. Because I conclude that the district court was correct in granting summary judgment to the defendant, I respectfully dissent from the majority's decision to reverse that order and remand the case for trial. The district court found that the plaintiff had not established unlawful discrimination based upon direct evidence, but that he had made out a prima facie case based on circumstantial evidence. The court also found that the defendant had provided a legitimate business reason for failing to promote Hopson -- specifically, that other applicants were better qualified than the plaintiff for the positions in question. Thus, the dispositive question becomes whether the plaintiff can establish pretext on the part of the defendant in relying upon this justification for its actions.

The majority concludes that there is sufficient evidence in the record to give rise to a genuine issue of material fact on the question of pretext, based solely on a combination of supervisor Slater's opinion that racial discrimination accounted for the company's actions with regard to Hopson and statistical evidence showing a disparity between minority representation in the work force and that in the ranks of management. I cannot agree with this conclusion, primarily because the evidence cited is simply insufficient to create a *genuine* issue of fact, and because the plaintiff has otherwise failed to show that the legitimate business reason put forward by the defendant is pretextual.

The majority agrees with the district court that Slater's testimony does not constitute direct evidence "that unlawful discrimination was a motivating factor in DaimlerChrysler's actions," pointing out that Slater "had no involvement in the decision-making process with respect to the particular jobs at issue." In this regard, the majority also notes that Slater "did

exercised jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. This Court's appellate jurisdiction is proper under 28 U.S.C. § 1291.

For the reasons discussed below, this Court finds that the district court erred in its conclusion that Plaintiff-Appellant failed to raise a genuine issue of material fact regarding Defendant-Appellee's legitimate, non-discriminatory reason, and, therefore, **REVERSES** the judgment of the district court, and **REMANDS** the case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual History

Eddie Hopson, Jr. ("Hopson"), an African-American, began working for DaimlerChrysler Corporation ("DaimlerChrysler" or "Chrysler")[1] in 1968. DaimlerChrysler's salaried workforce is organized for purposes of salary and responsibility into a band system. Salary bands run from Band 89 to Band 98. Employees at Band 94 and above are regarded as executives of the corporation. Significant to Hopson's lawsuit, supervisors and managers within the security operation of the corporation are in Bands 91, 92, or 93, generally depending on the size of the plant in which they work. The Senior Manager of Plant Security Operations, David Stepaniak ("Stepaniak"), is a Band 95 executive.

Hopson was originally hired by Chrysler as an assembly worker, but became a security guard a few months later. In 1978, he was promoted to a salaried supervisory position in security. Hopson continued his education during his employment with the company and earned an associate's degree in security and loss prevention, a bachelor's degree in safety management, and a master's degree in administration.

---

[1] At the time that he started working for the company, it was still the Chrysler Corporation.

In 1987, apparently in connection with a reduction of its work force, Chrysler demoted Hopson to a non-salaried guard position. Shortly thereafter, Hopson and others affected by the work force reduction brought suit against the company, alleging that their demotions were the result of race discrimination. As part of the settlement of that lawsuit, Chrysler re-promoted Hopson to a salaried supervisory position at one of the company's assembly plants. Between 1989 and 1997, Chrysler promoted Hopson three times to higher salaried positions at that plant. In particular, in 1996 he was promoted to the position of Complex Administrator – a leadership position in the security operation at a given complex. The Complex Administrator substitutes for the Complex Security Manager in the manager's absence.

Beginning in mid-1998, Hopson applied without success for seven job openings in the company,[2] all of which were posted internally at DaimlerChrsysler.[3] For each job, Hopson submitted an application, but was rejected in favor of a white employee. Stepaniak made each of the employment decisions for these positions, with the assistance of various other managers. The positions for which Hopson applied, and Stepaniak's proffered reasons for hiring other employees, are as follows:

First, in August 1998, Hopson applied for a Band 92 supervisory position as a security manager for the Mopar Parts Division. The job posting for this position called for a bachelor's degree in loss prevention, criminal justice, or a related field, and five to seven years of supervisory experience

---

[2] Hopson attributed retaliation as the cause for his not being able to obtain two of the seven positions for which he applied. He has abandoned his retaliation claim on appeal, and, therefore, the Court will address only the five employment actions currently at issue.

[3] In addition, Hopson claims that in December 1998 he was demoted from his position as complex administrator to the position of line supervisor. Hopson has not claimed, however, that this demotion was based on race.

The Court finds that Hopson's evidence raises a genuine issue with respect to whether the proffered reasons constitute pretext for discrimination. Dr. Sase's statistics, when coupled with Slater's testimony, tend to show that, if Defendant-Appellee's employment decisions were not based on legitimate criteria, then they were based on racial animus. In fact, while the statistical discrepancy may have arisen due to some other factor not yet taken into account, Slater's testimony indicates that the only possible explanation for Defendant-Appellee's employment decisions, other than legitimate employment criteria, is racial discrimination.

Therefore, the Court finds that Plaintiff-Appellant has raised a genuine issue of material fact with respect to whether Defendant-Appellee's proffered reasons for its employment actions were pretextual, and hereby **REVERSES** the district court's judgment granting summary judgment to Defendant-Appellee with respect to Plaintiff-Appellant's claim of discrimination brought pursuant to Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et seq.*

### IV. CONCLUSION

Plaintiff-Appellant has presented sufficient evidence to raise a genuine issue of material fact with respect to whether Defendant-Appellee's legitimate, non-discriminatory reasons for its employment decisions are pretextual, and whether they are a pretext for discrimination. Therefore, the judgment of the district court is **REVERSED**, and the case is **REMANDED** for further proceedings in accordance with this Opinion.

### 2. Elliott-Larsen Civil Rights Act

The basic burden-shifting analysis applicable to Hopson's federal claims is also applicable to his state claims arising under Michigan law.[8] *See Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521-22 (Mich. 2001). Unlike federal law, however, Michigan law imposes a higher burden on plaintiffs after the employer has presented a legitimate, non-discriminatory reason for its employment actions. Specifically, Michigan law requires that the plaintiff show that the employer's stated reason is pretext for discrimination. *See Lytle v. Malady*, 579 N.W.2d 906, 916 (Mich. 1998). In *Lytle*, the court stated:

> [D]isproof of an employer's articulated reason for an adverse employment decision defeats summary disposition only if such disproof also raises a triable issue that discriminatory animus was a motivating factor underlying the employer's adverse action. In other words, plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for . . . discrimination.

*Id.* Although *Lytle* was issued before *Reeves*, it appears that *Lytle* is still good law with respect to this issue in Michigan. Thus, having concluded that Hopson has met his burden of raising a genuine issue of material fact with respect to whether DaimlerChrysler's stated reasons for its employment decisions are pretext, the Court now turns to the question of whether Hopson has raised a genuine issue of material fact with respect to whether DaimlerChrysler's stated reasons are pretext for discrimination.

---

[8] Michigan law also accepts statistical evidence as proof that the defendant's legitimate, non-discriminatory reason for its employment decisions constitutes pretext. *See Dixon v. W.W. Grainger, Inc.*, 423 N.W.2d 580, 585 (Mich. Ct. App. 1987) ("The use of statistics may be relevant in establishing a *prima facie* case of discrimination or in showing that the proffered reasons for a defendant's conduct are pretextual.").

in "security/fire prevention." Twenty-three employees, including Hopson, applied for the position. According to Stepaniak, he and Michael Picraux, the manager to whom the person in this position would report, ultimately chose Warren Hawkins, a white male, to fill the opening because they considered him to be the most qualified for the job. Conceding that Hopson met the posted job requirements, Stepaniak noted that Hawkins, a thirty-year company veteran, was selected because he had managerial experience that Hopson lacked, and "rated more highly than Mr. Hopson in his annual evaluation."

Second, in November 1998, Hopson applied for the position of training administrator, also a Band 92 position. DaimlerChrysler's posting for this position indicates that a bachelor's degree in criminal justice, education, or a related field is required, along with five years supervisory experience in "security/fire prevention." Hopson and sixteen other employees posted for the job. With respect to this position, Stepaniak states that he and the other decision-maker chose Sean Joyce, a white male, whom they considered to be the most qualified person for the job. According to Stepaniak, Joyce had experience training security employees as a security manager, while Hopson lacked experience as a security manager. In addition, Stepaniak notes that Joyce was rated more highly than Hopson in his annual evaluations.

Third, on March 15, 1999, Hopson applied for the position of support services analyst, a Band 91/92 position. According to the posting, this position "requires a bachelor's degree." The posting also indicates, however, that "significant relevant experience may be considered in lieu of a degree." The position further requires five years of "progressively responsible experience in security or labor relations management." Thirty-eight people applied for the position, including Hopson. Ultimately, Michael Sepanic, a white male, was hired to fill the position. Stepaniak states that he and the other decision-maker determined that Sepanic was the most qualified person for the job, despite the fact that, unlike Hopson, he lacked a bachelor's degree. According to

Stepaniak, "labor relations activities would be a significant component" of the position, and Sepanic was chosen for his "significant experience as a management representative in labor relations," which Hopson lacked. In addition, Stepaniak notes that Sepanic was "rated more highly than Mr. Hopson in his annual evaluations."

Fourth, in June 1999, Hopson applied for a security management position at DaimlerChrysler's Detroit Complex. The requirements for this job include a bachelor's degree in loss prevention, criminal justice, or a related field, and five to seven years experience in "security/fire prevention." Fifteen employees applied, including Hopson. Stepaniak states that he, along with the other decision-maker, selected Larry Dubyak, a white male, whom they determined to be "the best candidate for the job." Dubyak had "the requisite degree, and has nearly thirty years of experience in security, including staff positions at DaimlerChrysler headquarters and experience as a security manager" at another company facility. Stepaniak also notes that the position amounted to a lateral move for Dubyak, who had requested a transfer to a facility closer to his home. According to Stepaniak, Dubyak's selection "allowed [the company] to accommodate [his] request." In addition, Stepaniak claims that, while Hopson met the basic qualifications for this position, he lacked Dubyak's experience as a security manager and was not as highly rated in his annual evaluations.

Finally, Hopson applied for the position of Manager Out of State Plants. DaimlerChrysler's posting for this job indicates that a bachelor's degree in loss prevention, criminal justice, or a related field is required, "but may be offset by a combination of education currently in process and comparable experience in security/fire prevention." The experience requirement includes seven to ten years "of progressively responsible assignments within a plant security function, preferably including managerial assignment(s) . . . ." Fifteen employees applied for the position, including Hopson. Ultimately, Stepaniak selected Thomas Kondratowicz, a white male, to fill the position, based on his conclusion that

are entitled to summary judgment *unless* the plaintiffs can either show that the defendants' explanations are inherently suspect or the plaintiffs present other direct or circumstantial evidence suggesting that the proffered reasons are not true). Thus, by presenting statistical evidence along with Slater's testimony, Hopson has raised a genuine issue with respect to whether DaimlerChrysler's proffered reasons for its employment decisions constitute pretext.[7]

The Court recognizes that, on remand, Defendant-Appellee may challenge various aspects of Hopson's statistics. As DaimlerChrysler points out on appeal, Dr. Sase's statistics do not identify the percentage of African-American workers who were qualified for supervisory and managerial positions, nor do they identify the number of African-Americans who applied for such positions. Nonetheless, "[a]t the summary judgment stage, a plaintiff is not required to anticipate and rebut every possible weakness in his otherwise valid statistical evidence." *Id.* at 1467 n.13.

Therefore, this Court finds that Plaintiff-Appellant has raised a genuine issue of material fact with respect to whether Defendant-Appellee's proffered reasons for its employment actions were pretextual, and hereby **REVERSES** the district court's judgment granting summary judgment to Defendant-Appellee with respect to Plaintiff-Appellant's claim of discrimination brought pursuant to Title VII, 42 U.S.C. § 2000e-2000e-17.

---

[7]The Court also notes the questionable basis of the allegedly legitimate criteria that support DaimlerChrysler's decisions with respect to the promotions for which Hopson applied. In particular, each employee who was selected for a job over Hopson was noted to have been rated more highly on his annual evaluation. The parties did not present evidence explaining how such evaluations are conducted. Without having that information, the Court recognizes the possibility that the annual evaluations themselves are inherently discriminatory.

operations in particular has testified that he believed discrimination to be involved clearly provides some evidence that this was the case, and that Defendant-Appellee's proffered reasons for its employment decisions were false.

Finally, Hopson presents statistical evidence that creates a genuine issue of material fact with respect to whether DaimlerChrysler's non-discriminatory reason is pretext. In particular, Hopson presents the affidavit of Dr. Sase, who observes that 34.8% of the security guards at DaimlerChrysler are black, while only 18.5% of the company's security managers are black. Dr. Sase concludes that this disparity is statistically significant, and that it indicates that African-Americans are under-represented in supervisory and management positions in the company's security operations.

"When a plaintiff's statistics indicate a disproportionate [employment] rate for a protected group there are three possible explanations for the discrepancy: the operation of legitimate selection criteria, chance, or the defendant's bias." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1468 (6th Cir. 1990) (citations omitted). Hopson has demonstrated that the disparity between the percentage of African-American security guards and African-American managers is not due to chance, as Dr. Sase has found the difference to be statistically significant. *See id.* at 1468-69 (finding that, when a plaintiff demonstrates a "significant statistical disparity" in the employment rate, he has provided "strong evidence" that chance is not the cause of the employment pattern). Thus, the Court is left to determine whether the more likely cause of the disparity is Defendant-Appellee's improper bias, or legitimate selection criteria. We hold that where, as here, significant statistics are coupled with independent circumstantial evidence of discrimination, the plaintiff has met his burden of demonstrating that the statistical disparity is more likely than not due to the defendant's bias, and the defendant is not entitled to summary judgment. *See id.* at 1469 (concluding that, when, in the face of statistics, defendants present a legitimate, non-discriminatory reason to explain each allegedly discriminatory employment action, the defendants

Kondratowicz was the "best qualified" applicant. When he was hired, Kondratowicz was in the process of getting a bachelor's degree, and had almost thirty years experience at the company, including managerial experience. Hopson, however, did not have managerial experience.

## B.  Procedural History

Based on the foregoing adverse employment decisions, Hopson filed suit against the company in August 1999, alleging that his employer violated Title VII, 42 U.S.C. § 2000e-2000e-17, and the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et seq.*, by discriminating against him on the basis of his race. In his complaint, Hopson also alleged that the company retaliated against him for bringing his prior complaint of race discrimination.

After a period of discovery, DaimlerChrysler moved for summary judgment. For purposes of the motion, the company conceded that Hopson had made out a *prima facie* case of discrimination with respect to the employment actions identified in his complaint. The company then presented its legitimate, non-discriminatory reasons for its employment decisions, as described by Stepaniak, and set forth above. DaimlerChrysler then argued that Hopson could not raise a genuine issue of material fact with respect to whether the company's legitimate, non-discriminatory reason for its actions constituted pretext. In addition, the company contended that Hopson could not show a causal connection between his prior discrimination complaint and any adverse employment action.

In response, Hopson argued that he had presented sufficient evidence tending to show that the company's stated reasons were pretextual. In particular, Hopson pointed to the deposition testimony of Ethelbert Slater ("Slater"), a manager in the security area and one of Hopson's supervisors. When asked whether he believed that Hopson's race was a factor in his not obtaining the jobs for which he applied, Slater replied, "[i]n my opinion, yes." Hopson also emphasized his own qualifications, and argued that "it is evident that [the

company] tailor-made the job specifications to fit the [white] person who ultimately was promoted into the position."

Finally, Hopson submitted an affidavit from John Sase, Ph.D., an economist at Oakland University. In his affidavit, Dr. Sase stated that he performed a statistical analysis of data provided by DaimlerChrysler regarding the racial composition of the company's security department. He compared the number of supervisors and managers to the number of security guards and found that 34.8% of union security guards employed by DaimlerChrysler are African-American, while only 18.5% of supervisors and managers are African-American. Based on this finding, Dr. Sase offered his opinion "that there exists an under-representation of black employees in the Band 91, 92 and 93 classifications of supervisors and managers in the security operations of DaimlerChrysler Corporation."

After hearing oral argument, the district court granted DaimlerChrysler's motion for summary judgment. The court concluded that Hopson was unable to raise a genuine issue of material fact as to whether DaimlerChrysler's stated reasons for its employment actions were pretextual. First, the district court found that Slater's testimony was not probative because Slater admitted that he had nothing to do with the hiring decisions in question. Second, the court rejected Hopson's assertion that the job specifications in question were "tailor-made" to suit the person ultimately selected, finding that this allegation "is not supported by evidence." Third, the court held that the statistical evidence presented by Hopson did not demonstrate pretext. According to the district court, the statistics were "incomplete," because they failed to reflect "the number of African-American applicants for those jobs or their qualifications." Finally, the court found "no evidence" that any adverse employment action was based upon retaliation for Hopson's previously filed complaint of race discrimination. The district court entered judgment in favor of the Defendant-Appellee on January 17, 2001. Hopson now appeals from that judgment.

concurring) ("[T]he entire purpose of the *McDonnell Douglas prima facie* case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by."). In light of these considerations, the Court finds that, at the very least, the circumstances in the matter *sub judice* give rise to a genuine issue of material fact as to whether DaimlerChrysler's proffered reasons actually motivated its employment decisions.

In addition to the foregoing evidence, Hopson has presented the deposition testimony of Ethelbert Slater, a Band 93 manager in DaimlerChrysler's security operation. During his deposition, Slater testified that, in his opinion, Hopson's race was a factor in the company's decisions not to hire him for the jobs for which he applied. Although Slater's opinion does not constitute direct evidence of discrimination, as Slater has conceded that he was not a decision-maker with respect to these job openings, it certainly constitutes circumstantial evidence of discrimination. As a Band 93 manager, Slater presumably had knowledge regarding the company's practices and policies for employment decisions, and the qualities and experience that must be possessed by employees and managers within the security operation. Furthermore, as Hopson's supervisor, Slater was aware of his strengths and weaknesses, and how he might perform in the various positions for which he applied. In light of this knowledge, Slater was no doubt able to form a competent opinion regarding why Hopson was passed over for certain jobs. Certainly, at trial, Hopson will have to demonstrate that Slater's opinion is connected to the decision-makers' actual attitudes. *See Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999) (stating that, for a lay witness's opinion testimony to be admissible, the opinion must be rationally based on the witness's perceptions); *Feazell v. Tropicana Prods., Inc.*, 819 F.2d 1036, 1041 (11th Cir. 1987) (finding that a manager's opinion about his superiors' actions is irrelevant unless clearly connected to the superiors' attitudes). At the summary judgment stage, however, the fact that a Band 93 manager with knowledge about the company and the security

his prior management experience.  Stepaniak, for reasons not evidenced in the record, completely discounted any management experience that Hopson had, as well as Hopson's bachelor's and master's degrees.

In each of the foregoing instances, the alleged legitimate, non-discriminatory reason was vague, failed to specify the manner in which the white employees were better qualified, or the degrees of difference in the annual evaluations. Moreover, it is virtually unfathomable, given Hopson's education and management experience, that he was not even interviewed for any of these positions.  Indeed, a reasonable juror could find that these circumstances bespeak a pattern or practice of discrimination which resulted in the Plaintiff's not being promoted.  In our view, this record contains a genuine issue of material fact that makes summary judgment inappropriate.

We recognize that "Title VII does not diminish lawful traditional management prerogatives in choosing among qualified candidates." *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987).  We also recognize, however, that:

> '[d]iscrimination victims often come to the legal process without witnesses and with little direct evidence indicating the precise nature of the wrongs they have suffered.' . . .   Cases charging discrimination are uniquely difficult to prove and often depend upon circumstantial evidence. . . . 'This is true in part because . . . discrimination . . . is often subtle.' . . . '[A]n employer who knowingly discriminates . . . may leave no written records revealing the forbidden motive and may communicate it orally to no one.' . . .   The distinct method of proof in employment discrimination cases . . . arose out of the Supreme Court's recognition that direct evidence of an employer's motivation will often be unavailable or difficult to acquire.

*Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996) (citations omitted); *see Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (O'Connor, J.,

## II.  STANDARD OF REVIEW

A district court's grant of summary judgment is subject to *de novo* review by this Court.  *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 465 (6th Cir. 2002) (citations omitted).

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993).  In response, the non-moving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339-40 (6th Cir. 1993).  "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party, however, "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).  Furthermore, the mere existence of a scintilla of evidence in support of the non-

moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

## III. DISCUSSION

On appeal, Hopson does not challenge the district court's ruling with respect to two of the seven allegedly discriminatory employment actions that were brought before the district court, nor does he challenge the district court's ruling with respect to his retaliation claim. Thus, those claims are deemed abandoned. *See Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir. 1991) (concluding that any issues not raised by the appellant with respect to the district court's ruling are considered abandoned on appeal and not reviewable by this Court). Pending for review is the district court's disposition of Hopson's disparate treatment claims regarding the above five employment actions, brought pursuant to Title VII and Michigan's Elliott-Larsen Civil Rights Act.

### A. Direct Evidence of Discrimination

Under both Title VII and Michigan law, a plaintiff may set forth a *prima facie* case of employment discrimination by presenting direct evidence of the defendant's discriminatory intent. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (plurality opinion)); *Harrison v. Olde Fin. Corp.*, 572 N.W.2d 679, 683 (Mich. Ct. App. 1997) (holding that, when the plaintiff presents direct evidence of discrimination, federal law provides appropriate guidance for analyzing claims brought under the Michigan Civil Rights Act). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (citations omitted).

Hopson contends that he presented direct evidence of DaimlerChrysler's discrimination by virtue of Slater's

or labor relations management. According to counsel at oral argument, and not contradicted by the record, Hopson had this experience. As noted above, Hopson had not only a bachelor's degree, but a master's degree. Nonetheless, Stepaniak hired a white male, one Michael Sepanic, who lacked a bachelor's degree, but, in Stepaniak's words, had "significant experience as a management representative in labor relations." Once again, Stepaniak relied on the fact that Sepanic was rated more highly than Hopson in his annual evaluations, although the Defendant failed to offer evidence of this higher rating.

Fourth, in June 1999, Hopson applied for a security management position. This job also required a bachelor's degree and five to seven years experience in security/fire prevention. Stepaniak selected Larry Dubyak, a white male, whom he determined to be the best candidate for the job. Dubyak had a degree and a comparable amount of experience in security including staff positions at DaimlerChrylser, and as a security manager at another company facility. Stepaniak indicated that, in addition to the qualifications, awarding Dubyak the job allowed the company to honor his request for a transfer to a facility closer to home. Additionally, Stepaniak again intoned that Dubyak rated more highly in his annual evaluations than did Hopson. Other than Stepaniak's claim, there was no evidence that Dubyak rated more highly than Hopson, nor was there any evidence that Stepaniak considered Hopson's request for a supervisory role in the same vein that he considered Dubyak's request to move closer to home.

Finally, Hopson applied for the position of manager of out-of-state plants, which required a bachelor's degree, but "which may be offset by a combination of education currently in progress and comparable experience in security/fire prevention." Hopson, of course, met the education requirement, but Stepaniak gave the position to Thomas Kondratowicz, a white male, who did not have a bachelor's degree, but was in the process of getting one. Stepaniak found Kondratowicz the best qualified applicant because of

in security fire prevention. The Plaintiff not only had the required bachelor's degree, but also had a master's degree. In addition, the Defendant conceded that Hopson had the required supervisory experience. Despite the fact that Hopson met these requirements, DaimlerChrysler ultimately chose Warren Hawkins, a white male, to fill the position because "he had managerial experience that Hopson lacked" and he "rated more highly than Mr. Hopson in his annual evaluation." The Defendant did not state, nor is the record clear, as to the manner in which Hawkins rated more highly than Hopson. Nor did the Defendant state what type of managerial experience Hawkins had that Hopson lacked.

Similarly, in November 1998, when Hopson applied for a training administrator position, which required a bachelor's degree in criminal justice, education, or a related field, along with five years supervisory experience in "security/fire prevention," he was rejected for essentially the same reason. Stepaniak, the decision maker, chose a white male, Sean Joyce, whom he considered more qualified because Joyce had experience training security employees as a security manager, while Hopson allegedly lacked that experience. The record reflects, however, that during one period with the company, Hopson had actually supervised persons who trained security employees. Additionally, Stepaniak contended that Joyce was rated more highly than Hopson in his annual evaluation – seemingly a mantra for Stepaniak in articulating his reasons for not having given Hopson any one of these five positions. Once again, Defendant failed to indicate the extent to which Joyce's evaluations were better than Hopson's.[6]

On March 15, 1999, Hopson applied for a position of support services analyst, which required a bachelor's degree, but noted that significant relevant experience may be considered in lieu of the degree. The position also required five years of progressively responsible experience in security

---

[6]During oral argument, defense counsel conceded that Hopson had "excellent" annual evaluations.

deposition testimony that, in his opinion, Hopson's race was a factor in the company's decision to deny him the promotions for which he applied. Although Slater is a manager in the company, he admitted that he had no involvement in the decision-making process with respect to the particular jobs at issue. Furthermore, he did not reveal the basis for his opinion. Thus, while Slater's opinion may constitute circumstantial evidence of discrimination, even if believed, it does not require the conclusion that unlawful discrimination was a motivating factor in DaimlerChrysler's actions. *See Nguyen*, 229 F.3d at 563 (stating that direct evidence includes a decision-maker's express statement of a desire to take action against employees who are members of a protected class).

Therefore, the district court properly concluded that Plaintiff-Appellant failed to raise a genuine issue of material fact by presenting direct evidence of Defendant-Appellee's discriminatory intent.

### B. Circumstantial Evidence of Discrimination

#### 1. Title VII

The analytical framework governing Title VII cases in the absence of direct evidence of discrimination is well-established. First, the plaintiff must set forth a *prima facie* case, which gives rise to an inference of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (stating that to establish a *prima facie* case, a Title VII plaintiff must show: (1) that he is a member of a protected class; (2) that he was qualified for the job; (3) that he suffered an adverse employment decision; and (4) that the job was given to a person outside his protected class). Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action at issue. *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant meets this burden, then the

burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804). When the burden shifts back to the plaintiff, although he must come forward with evidence that the company's reason for the employment action is false, he need not present independent evidence that the proffered reason is pretext for racial discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000) ("[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").[4]

Here, there is no dispute that Hopson has set forth a *prima facie* case. Nor do the parties dispute that DaimlerChrysler has presented a legitimate, non-discriminatory reason for its employment decisions. Hopson's chief complaint on appeal is that the district court erred in ruling that Hopson failed to raise an issue of fact with respect to whether DaimlerChrysler's stated reasons for the employment decisions at issue were pretextual.

"A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B.*

---

[4] The dissent states that the plaintiff has the burden of proving that the defendant's non-discriminatory reason is pretext, and that the actual reason for the defendant's action is discrimination. The majority recognizes that the plaintiff always maintains the burden of proving that the defendant engaged in intentional discrimination. *See Burdine*, 450 U.S. at 253. *Reeves* clarified, however, that the plaintiff need not present independent proof of discrimination after the defendant has presented a legitimate, non-discriminatory reason to satisfy this burden. To the contrary, the plaintiff can meet his burden of proving intentional discrimination simply by presenting evidence that the defendant's proffered reason is not worthy of credence. *Reeves*, 530 U.S. at 147 (noting that "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation"). We have adhered to that evidentiary guideline in our evaluation of Hopson's case.

*Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (citation omitted). This Court finds that Hopson has presented evidence on the basis of which a reasonable juror could find that DaimlerChrysler's proffered reasons did not actually motivate its employment decisions.[5]

Hopson has presented evidence that he applied for five positions for which Defendant-Appellee concedes he was qualified, and for which he was rejected before he was even given an interview. It strains credulity to conclude that, not once, but five times, the other employees who applied for the open positions were so significantly more qualified than Hopson that he was not even worthy of an interview. A review of each instance in which Hopson was rejected is telling.

First, in August 1998, Hopson applied for a Band 92 supervisory position as a security manager, which required a bachelor's degree in loss prevention, criminal justice, or a related field, and five to seven years of supervisory experience

---

[5] Hopson has also raised one factual issue with respect to the reasons set forth by Stepaniak for DaimlerChrysler's employment decisions. Specifically, Hopson points out that Warren Hawkins testified during his deposition that he was hired as the Mopar Depot Security Manager in April 1998. The company did not post the job, however, until July of that year. Hopson argues that this discrepancy shows the company had no intention of conducting a meaningful search for qualified candidates. More likely, however, Hawkins was simply mistaken about the date on which he was promoted, as company records indicate that Hawkins was not promoted until August 1998. Therefore, the district court did not err in rejecting this alleged discrepancy as a basis for finding that Hopson had raised a genuine issue of material fact with respect to whether DaimlerChrysler's legitimate, non-discriminatory reason was pretextual.

Hopson also asserts that DaimlerChrysler discriminated against him by "tailor-ma[king] [the] qualifications to fit the white male applicants." At bottom, this amounts to a conclusory allegation that is not supported by specific facts in the record. Thus, the district court properly rejected this argument, as well. *See Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 463 (6th Cir. 2001) (noting that "conclusory allegations and [the plaintiff's subjective] perceptions . . . are not sufficient to stave off summary judgment").