**Brinda Perkins REID, Plaintiff–Appellant,**

v.

**MICHIGAN DEPARTMENT OF CORRECTIONS, Defendant–Appellee.**

No. 02–2339.

United States Court of Appeals, Sixth Circuit.

June 15, 2004.

Thomas E. Marshall, Rochester Hills, MI, for Plaintiff–Appellant.

Stephen M. Geskey, Michigan Department of Attorney General, Lansing, MI, for Defendant–Appellee.

Before: BOGGS, Chief Circuit Judge, DAUGHTREY, Circuit Judge, and ALDRICH,* District Judge.

PER CURIAM.

The plaintiff, Brinda Reid, appeals the district court's grant of summary judgment to the defendant. Michigan Department of Corrections (MDOC), Reid's employer, in this civil rights action alleging violation of Title VII and Michigan's Elliott–Larsen Act. Reid, an African–American, alleged in her complaint that she was denied four promotions and two lateral transfers because of her race and gender. Five of the appointments went to white

* The Hon. Ann Aldrich, United States District Judge for the Northern District of Ohio, sit-

males and the sixth went to a white female. The district court found that the plaintiff had failed to establish a prima facie case and, further, that Reid was unable to show that MDOC's reasons for not promoting or transferring her were pretextual. For the reasons indicated below, we find no reversible error and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Brinda Reid began her career in the Michigan Department of Corrections in 1987 as a probation officer. She has a bachelor's degree in political science from the University of Detroit and a master's degree in criminal justice. In 1995, Reid was promoted to a supervisory position as a Parole/Probation Manager 13, or PPM 13, working in the Troy office in Oakland County in MDOC's Region II.

During 2000 and 2001, Reid interviewed for four promotions and two lateral transfers. In each instance, Reid was interviewed by a three-member panel that applied MDOC's standardized guidelines, which base 60 percent of an applicant's score on performance at the interview and the remaining 40 percent on "background checks." In each of the appointments now in question, the interview panel recommended for promotion or transfer the person who received the highest interview score, and that person ultimately received the appointment.

Reid first alleged that she was discriminated against when two promotions to Parole/Probation Manager 14 (PPM 14) positions were given to white males, Charles Cilibraise and James Mix, in October 2000. Twenty-two people, including plaintiff, interviewed for the two positions. The pan-

ting by designation.

el, comprised of one white male, one white female, and one African–American female, recommended Cilibraise and Mix, both of whom scored higher than Reid in the interviews. Reid alleged that she had more experience and exposure on committees than these candidates, especially Cilibraise, who had less seniority than Reid at MDOC and who held only a bachelor's degree.

Reid also complained that she was discriminated against when she was not selected for a Parole/Probation Manager 15 (PPM 15) position for which she interviewed in May 2000. Seven candidates were interviewed, and a white male, Todd Boyd, who scored higher than Reid on the basis of his interview, was given the position.

The fourth promotion decision in question was for another PPM 14 position at MDOC. Reid, along with five other candidates, interviewed for the promotion in August 2000. The panel, consisting of one white male and two white females, recommended a white male, Steven Siegrist, for the promotion. Again, the candidate selected had received a higher interview score than did Reid.

The fifth decision that Reid contested involved a lateral transfer to a position at the same pay rate in MDOC's Region I. The interview panel, consisting of one white man and two African–American women, recommended a white man, Robert Poikey, who scored higher than the plaintiff in the interview. Reid argued that she had more experience than Poikey did.

Finally, Reid claimed racial discrimination in a second lateral-transfer decision. Twelve candidates interviewed for the position. The panel consisted of one white male, one white female, and one African–American male. The panel recommended a white woman, Margaret Topham, who performed better on the interview than the plaintiff did.

To support her claim of racial and gender discrimination, Reid alleged that she was more qualified for all six positions than the candidates actually selected. She provided the district court with performance evaluations prepared by MDOC from September 1995 through August 1998 and with references given by past supervisors, including a Wayne County Circuit Court judge for whom she worked in the early 1990's. She also claimed that her applications for the six positions were unfairly prejudiced by a negative evaluation from an MDOC Area Manager, Ken Aud. According to Reid, Aud's evaluation was motivated by racial animus and was "used as a tool to discriminate" by MDOC.

The district court granted MDOC summary judgment, holding that Reid was unable to establish a prima facie case. The court also found that even if she could establish a prima facie case, she was unable to demonstrate that MDOC's reasons for promoting and transferring other candidates were pretexts for discrimination. This appeal followed.

## DISCUSSION

Reid's discrimination claims were brought under both Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e—2000e–17, and Michigan's Elliott–Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2101—37.2803. Because claims brought under the latter statute are analyzed under the same standards applicable to claims brought under the former, our discussion is applicable to both claims. *See Cicero v. Borg–Warner Automotive, Inc.*, 280 F.3d 579, 584 (6th Cir.2002); *Perry v. McGinnis*, 209 F.3d 597, 602 n. 3 (6th Cir.2000). In either case, the plaintiff must establish that she or he has been subjected

to a "materially adverse" change in the terms or conditions of her employment as the result of invidious discrimination on the part of the employer. *See Nguyen v. City of Cleveland,* 229 F.3d 559, 562 (6th Cir.2000);

Under both state and federal law, the failure to promote constitutes such an adverse employment action. *See id.; Hazle v. Ford Motor Co.,* 464 Mich. 456, 628 N.W.2d 515, 523 (Mich.2001). Because the plaintiff in this action has produced no direct evidence of discrimination and must therefore rely on circumstantial evidence to establish a prima facie case, her claim is subject to the burden-shifting analysis developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which requires that she demonstrate by a preponderance of the evidence that "(1) [s]he is a member of a protected class; (2)[s]he applied for and was qualified for a promotion, (3)[s]he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied." *Nguyen,* 229 F.3d at 562–563. If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 802. If, in turn, the defendant carries this burden, the plaintiff can still succeed if she can prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

In analyzing the record under the *McDonnell Douglas* standard, the district court apparently assumed (without specifi-

cally finding) that Reid established the first three prongs of her prima facie case. However, the court determined that she had failed to meet the fourth requirement because she had not proved that she had qualifications similar to the persons who were selected for the positions she sought. The court apparently reached this conclusion by misapplying the holding of an unpublished opinion of this court that addressed the use of a party's affidavit, standing alone, to establish the *ultimate burden* of proving discrimination, applying it instead to proof of qualifications under *McDonnell Douglas. See Hickman v. City of Dayton,* 39 Fed.Appx. 243 (6th Cir.2002).

Following its ruling on the question of the plaintiff's prima facie case, the district court went to the next step in the *McDonnell Douglas* analysis, finding that the employer had provided legitimate, non-discriminatory reasons for its decision to promote or transfer other candidates instead of Reid. In reaching this conclusion, the district court noted that MDOC had produced evidence establishing that each candidate selected for promotion or transfer had scored higher than Reid in the interview portion of the selection process, which carried a 60–percent weight in the ranking of the candidates. MDOC also submitted affidavits or deposition testimony from all of the persons who sat on plaintiff's interview panels, each of whom stated that in every case the panel had recommended the candidate who achieved the highest interview score and that they did not take race or gender into account to arrive at their decision.

The district court then held that because MDOC had provided legitimate reasons, the burden shifted back to Reid to prove that the proffered reasons were a pretext for unlawful discrimination. After a careful review of the record, the court ruled

that Reid had not carried her burden in this regard. We agree.

Determining whether the reasons proffered by the defendant are pretextual requires a heightened examination of "the specific proofs and rebuttals of discriminatory motivation the parties have introduced." *St. Mary's Honor Center*, 509 U.S. at 516. To demonstrate pretext, "the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [her] discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994) (emphasis in original; internal quotation omitted); *see also Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir.2003); *Meagher v. Wayne State University*, 222 Mich.App. 700, 565 N.W.2d 401, 411 (Mich.Ct.App. 1997).

Reid's claim falls into the second *Manzer* category. To support her claim, Reid alleged, first, that she was more qualified than the other candidates; second, that Ken Aud's evaluation was motivated by discriminatory animus; and, third, that the low number of African–American women at high level positions in MDOC demonstrated a discriminatory pattern of promotion and transfer. We conclude that the district court was correct in finding, as a matter of law, that Reid had not shown that the reasons given by MDOC were pretextual.

Despite Reid's assertions, the proffered evidence fell short of proving that she was better qualified for the positions in question than were the applicants who were actually selected. The record on appeal includes all of the candidates' resumes, summaries of their relevant experience, and the forms used by MDOC to rank the candidates. A review of those materials leads us to conclude that Reid's qualifications stacked up particularly well only against Cilibraise, the candidate who did not have a master's degree and who had less seniority than Reid. However, Cilibraise, like all the other selected applicants, apparently out-performed Reid during the interviews, which counted heavily in the rankings. Specifically, Cilibraise received three "very good" rankings, four "good" rankings, and one "adequate" ranking. In contrast, during the same round of interviews, Reid received eight "good" rankings, and her supervisor, Myra Gonino, suggested that Cilibraise was more qualified than Reid for the promotion. In addition, Reid was clearly less qualified than two other selected candidates. As to the PPM 15 position, Reid concedes that it would have been rare to have received a double promotion and that the selected candidate, Boyd, had more seniority than she did. Finally, regarding the position at Thumb Correctional Facility, Reid admitted that she did not have any prior experience working in prisons, while the selected candidate, Topham, did.

All of the panelists submitted affidavits or deposition testimony stating that they recommended the candidate who was the most qualified for the position and that race and gender were not factors in their decision-making process. The panels that conducted and scored the interviews were comprised of both males and females, whites and African–Americans. Without more evidence showing that the panels were somehow biased, Reid's allegation that the white male panelists "steered" or unduly influenced the other panelists is simply unsubstantiated on the record.

In addition, Reid's own deposition testimony reveals a significant lack of knowledge about the other candidates' qualifications and about MDOC procedures for selecting applicants. Reid also admitted

that no one on the panels did or said anything to make her believe that she was discriminated against. Although Reid attempted to bolster her qualifications by submitting positive evaluations that she had received from past supervisors, and although these evaluations reflect well on Reid, they do not demonstrate that she is more qualified than the candidates selected or that MDOC's reasons for not selecting her were pretextual.

Second, Reid claims that Ken Aud gave her an evaluation that was both negative and false because he was motivated by unlawful racial animus. We have noted that "the impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision in violation of Title VII." *Bickerstaff v. Vassar College*, 196 F.3d 435, 450 (2d Cir.1999). In this case, however, there is insufficient evidence that Aud "played a meaningful role in the promotion process." *Id.* In fact, the evidence suggests that the reference provided by Aud, who was an Area Manager for Region II, was used by the panels interviewing candidates only for Region II positions. Even if Aud's evaluation was used, it is not clear how his reference would serve as a "catalyst" for discrimination—especially given that Aud did not sit on any of the panels. Finally, the record does not support the plaintiff's claim that Aud's evaluation was actually motivated by racial discrimination, containing only her allegation that Aud was "appear[ed] to have disdain for African–Americans." No affidavits or sworn statements support this allegation.

Third and finally, Reid points to the low number of African–American women at high levels at MDOC as evidence that the reasons for failing to promote her were pretextual. We have held that statistical evidence may serve as circumstantial evidence of discrimination:

> When a plaintiff's statistics indicate a disproportionate [employment] rate for a protected group there are three possible explanations for the discrepancy: the operation of legitimate selection criteria, chance, or the defendant's bias.... [W]here ... significant statistics are coupled with independent circumstantial evidence of discrimination, the plaintiff has met [her] burden of demonstrating that the statistical disparity is more likely than not due to the defendant's bias, and the defendant is not entitled to summary judgment.

*Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 437–38 (6th Cir.2002). *See also Cicero*, 280 F.3d at 593.

There is a factual dispute concerning the statistics upon which Reid relies. She alleged that no African–American *woman* has been promoted above the level of a PPM–13 in Region II. In response, MDOC submitted a list of over 300 African American *men and women* who attained a level of PPM–13 or higher. Although the district court found that this list "flatly contradicted" Reid's allegation, we note that because the list included men as well as women employees, at the PPM13 level as well as higher levels, this finding was not completely accurate. Nevertheless, the list appears to include a significant number of women's names, and there was evidence that they are employed at levels above PPM 13. Moreover, the information supplied concerning the make-up of the various interview panels indicates that African–American women were included on those panels, although it is not clear at what level they were otherwise employed.

We are satisfied that, whatever the actual number, it is clear that there were few African–American women employed at high levels at MDOC. Unfortunately for

the plaintiff, statistical evidence alone is not enough to substantiate her discrimination claim. In this case, the statistical evidence produced was obviously weak rather than "significant," and it was not "coupled with *independent* circumstantial evidence of discrimination," as required by *Hopson*, 306 F.3d at 438 (emphasis supplied).

In summary, we conclude that the district court was correct in concluding that Reid failed to "produce sufficient evidence from which [a] jury [could] reasonably reject the employer's explanation" for not selecting her. *Manzer*, 29 F.3d at 1083.

### CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court granting summary judgment to the defendant.