**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0534n.06

Case No. 14-2417

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 29, 2015
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| KATHLEEN NORTON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| LTCH, dba McLaren Bay Special Care; BAY | ) | MICHIGAN |
| REGIONAL MEDICAL CENTER, dba | ) | |
| McLaren Bay Region, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: GILMAN, COOK, and KETHLEDGE, Circuit Judges.

COOK, Circuit Judge. Defendant McLaren Bay Special Care (MBSC) terminated Plaintiff Kathleen Norton's employment after she arrived two minutes late for a nursing shift. Norton had previously received three written reprimands for violating MBSC's attendance policy, and she knew that she risked termination if she continued to miss work. She claims, however, that MBSC should have recognized that she arrived late because she suffered from vestibular migraines—a serious medical condition covered by the Family Medical Leave Act (FMLA). The district court granted summary judgment to MBSC and related entity Bay Regional Medical Center on Norton's FMLA claims, and we AFFIRM.

I.

Norton worked at MBSC as a registered nurse for approximately seventeen years. She received generally positive performance reviews despite documented attendance issues. In early 2013, Norton received three written reprimands for excessive absenteeism and tardiness (*i.e.*, clocking in more than one minute late for a scheduled shift). She understood that she risked losing her job if she committed additional infractions.

In May 2013, Norton began to suffer from vestibular migraines, experiencing symptoms such as extreme dizziness, vertigo, nausea, vomiting, headaches, and sensitivity to light. On June 11, she visited the emergency room after becoming dizzy at work. Her supervisor, Monica Baranski, observed Norton's symptoms and contacted her physician. Norton's condition prevented her from working during the next two weeks.

MBSC permitted employees with serious health conditions to take intermittent leave under the Family Medical Leave Act. On June 12, MBSC Human Resources Generalist Markie Misiak sent Norton a letter informing her that she was eligible for intermittent FMLA leave and asking her to submit the required paperwork.

After receiving Norton's FMLA forms, MBSC approved her request for intermittent leave retroactive to June 6. Misiak notified Norton by letter on July 17. On July 18, Misiak emailed MBSC management to explain that Norton's June absences constituted FMLA leave.

Employees who received permission to take intermittent FMLA leave were still required to notify MBSC in advance if they intended to miss all or part of a shift. Specifically, MBSC required employees to call the Family Leave Call Center at least two hours before their scheduled shifts. Employees seeking an exception to that and other FMLA rules were instructed to submit written requests to the vice-president of human resources. Norton knew about

MBSC's notice requirement and called the Family Leave Call Center at least once in June or July 2013.

Norton arrived two minutes late for her July 14 shift without calling the Family Leave Call Center in advance. Norton claims that she was unable to anticipate her late arrival: "I was suffering from some symptoms and had to delay my arrival in order to get there safely so it wasn't—I wasn't anticipating needing to call either the FMLA line or the supervisor because I was en route to work. The two minute delay was unavoidable." She admits that she did not discuss her tardiness or symptoms with any MBSC manager or human resources representative between July 14 and 17.

On July 18, Norton met with Baranski, MBSC President Cheryl Burzynski, and Senior Human Resources Consultant Marilyn Bostick. According to Bostick, Norton "up front indicated that she [was late on July 14 because she] needed to get a babysitter and she had to wait for that babysitter to arrive." Bostick maintains that Norton repeated the babysitter excuse when asked if she arrived late for any other reason. The defendants corroborate Bostick's account with a set of handwritten notes that she allegedly took during the meeting. According to Norton, nobody asked her why she was late, and she did not remember providing a reason. She claims to recall little of what they discussed and does not remember seeing Bostick take notes. At the end of the meeting, Bostick handed Norton a letter terminating her employment with MBSC.

Norton sued MBSC, alleging that it interfered with her exercise of FMLA rights by failing to excuse her July 14 tardiness and retaliated against her for taking intermittent FMLA leave. The district court granted summary judgment to the defendants and denied Norton's motion for reconsideration. Norton timely appealed.

II.

We review the district court's grant of summary judgment de novo, *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998), construing all reasonable inferences in the nonmoving party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). We will affirm if "there is no genuine dispute as to any material fact and [MBSC] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).

III.

The FMLA entitles eligible employees who suffer from "a serious health condition that makes the employee unable to perform the functions of the position" to take twelve weeks of leave per year. 29 U.S.C. § 2612(a)(1)(D). We recognize two distinct theories of recovery under the FMLA: "interference" with FMLA rights under § 2615(a)(1), and "retaliation" or "discrimination" against employees who exercise FMLA rights under § 2615(a)(2). *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012). Norton asserts claims under both.

A.    *FMLA Interference*

Norton alleges that MBSC interfered with her FMLA rights by disciplining her for tardiness rather than recognizing that her serious medical condition—vestibular migraines—caused her to arrive two minutes late. To prevail on her interference claim, Norton must show that she gave MBSC notice of her intent to take FMLA leave on July 14. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)). That she cannot do.

As an initial matter, Norton's silence on and after July 14 deprived MBSC of an adequate basis for determining whether the FMLA covered her late arrival. An employee seeking FMLA

leave need not mention the statute expressly, but she must convey enough information to apprise her employer that she is requesting leave for a serious health condition that renders her unable to perform her job. *See Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004); 29 C.F.R. § 825.303(b). Here, Norton admits that she never told anyone in MBSC's management or human resources department why she was late that day. Even if a jury believed Norton that Baranski, Burzynski, and Bostick discharged her without asking her to explain her late arrival, her admitted failure to notify MBSC that she arrived late because she was experiencing vestibular-migraine symptoms dooms her interference claim.[1]

Norton's intermittent-leave request, submitted in late June, did not provide adequate notice of her intent to take FMLA leave on the morning of July 14. MBSC expressly required employees on intermittent leave to call the Family Leave Call Center before each FMLA-covered absence. Similarly, Misiak's June 12 letter concerning Norton's eligibility for intermittent leave stated the following in bold text: "When you are calling in for an FMLA day, you must call the FMLA Call Center phone number, in addition to your normal call-in procedure. This will be the only way a FMLA day will be approved." Norton knew that she needed to alert MBSC each time that vestibular-migraine symptoms prevented her from working a shift or arriving on time, and she followed the required call-in procedure at least once in June or July 2013.

Further, the FMLA did not require MBSC to assume that Norton's July 14 tardiness related to the same condition that precipitated her FMLA-covered absences in June. *See*

---

[1]Because Norton failed to notify MBSC that she arrived late due to vestibular-migraine symptoms at *any* point before filing this action, we need not reach her argument that MBSC's two-hour notice requirement itself violates the FMLA. We would reach that argument only if Norton missed the two-hour notice deadline but notified her employer "as soon as practicable under the facts and circumstances." *See* 29 C.F.R. § 825.303(a).

*Brenneman*, 366 F.3d at 423 n.9 (holding that an employee's explanation that he "wasn't doing well" failed to reasonably apprise his employer that he missed work for an FMLA-qualifying reason even though the employer knew that he had taken FMLA-qualifying leave for diabetes twice over the previous four years); *see also Brock v. United Grinding Techs., Inc.*, 257 F. Supp. 2d 1089, 1102 (S.D. Ohio 2003) ("The fact that [his employer] knew of his past serious medical condition, due to his use of leave during May and June of 1999 and his continued use of medication for that condition, does not create a duty to inquire whether all subsequent times that Plaintiff is 'sick' stem from his depression."). Instead, Norton bore the burden of notifying her employer that her late arrival stemmed from an FMLA-qualifying medical condition.

Because Norton cannot show that she provided notice of her intent to take FMLA leave on July 14, MBSC is entitled to summary judgment on her interference claim.

B.      *FMLA Retaliation*

Norton also argues that MBSC retaliated against her for taking FMLA leave in June 2013. She claims that MBSC's treatment of Jennifer Pogue, a nurse with similar attendance problems, shows that it used her attendance violations as a pretext for FMLA discrimination.

We apply the familiar *McDonnell Douglas* burden-shifting framework to Norton's retaliation claim. *Donald*, 667 F.3d at 762. We need not decide if she can carry her initial prima facie burden by relying on the close temporal proximity between MBSC's decision to grant Norton intermittent FMLA leave and its termination of her employment one day later. Norton does not dispute that MBSC could legitimately punish employees who violated its attendance policies, *see Ritenour v. Tenn. Dep't of Human Servs.*, 497 F. App'x 521, 530–31 (6th Cir. 2012), and she cannot show that MBSC used her attendance violations as a pretext to discriminate against her exercise of FMLA rights.

To show pretext, Norton must show both that MBSC's proffered reason was not the real reason it fired her and that the real reason was retaliation for protected activity under the FMLA. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (en banc). Norton argues that a jury could find MBSC's reasons pretextual because her employer applied its attendance policies more favorably to Pogue.[2] Specifically, she contends that a jury could infer MBSC's retaliatory motive from evidence that 1) Pogue faced no consequences for clocking in late during a July shift, and 2) MBSC departed from its policy twice when addressing Pogue's attendance issues.

As an initial matter, Norton cannot show that MBSC applied its attendance policy selectively because she and Pogue did not engage in "substantially identical conduct." *See Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006) (internal quotation marks omitted). Although Norton and Pogue both clocked in late during shifts in July, they did so under different circumstances. Norton arrived late for her shift on July 14 and never explained her tardiness. In contrast, Pogue returned from her lunch break on time, forgot to clock in, and immediately located Baranski to explain her mistake. Norton neither disputes Pogue's narrative nor presents evidence that MBSC managers lacked the discretion to excuse missed clock-ins for employees who arrived on time. In sum, MBSC's failure to punish Pogue for her late clock-in cannot support an inference of pretext.

Further, no jury could infer pretext from two other instances where, in Norton's view, MBSC deviated from its attendance and disciplinary policies. Norton first contends that Baranski violated MBSC's attendance policy by excusing Pogue's late clock-in during a face-to-

---

[2]Pogue's previous FMLA leave was sufficiently remote to permit a comparison with Norton. Pogue testified that she "maybe" applied for FMLA leave in 2011 and "guess[ed]" that she applied again in 2013. MBSC confirmed that Pogue took FMLA leave in 2011 but did not provide any records for 2013. Construing the record in Norton's favor, we assume that Pogue's FMLA-protected activity ended at least a year-and-a-half before Norton's discharge.

face meeting despite a provision requiring employees to submit written requests for exceptions to human resources. Even if MBSC improperly excused a non-tardy employee from complying with its written-request requirement, such a minor departure from policy has little bearing, if any, on MBSC's motives for discharging an admittedly tardy employee. *Cf. DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 394 (6th Cir. 2005) ("[A]n employer's failure to follow a policy that is *related to termination or demotion* can constitute relevant evidence of pretext." (emphasis added)); *see also Marshall v. Belmont Cnty. Bd. of Comm'rs*, No. 2:13-cv-966, 2015 WL 2406100, at *7–8 (S.D. Ohio May 20, 2015) (identifying the "general rule" in this circuit's case law that an employer's failure to follow its own policies has some probative value where the policy relates to demotion or termination and the plaintiff presents other evidence of pretext).

Norton also argues that MBSC functionally "excused" one of Pogue's late arrivals by waiting until she accrued three-and-a-half attendance points to issue a first written reprimand. But Norton received even more favorable treatment by her own logic because MBSC effectively excused *three* of her late arrivals by issuing her first written reprimand after she accumulated four-and-a-half points. More importantly, MBSC issued initial reprimands to both employees in January 2013, five months before Norton requested FMLA leave and, accordingly, five months before MBSC would have had any reason to retaliate against her. MBSC's failure to impose consequences as soon as its employees accumulated three attendance points fails to support the inference that it used Norton's continued attendance violations as a pretext for FMLA discrimination.

Norton cannot show that MBSC applied its attendance and disciplinary policies selectively, and she presents no other evidence from which a jury could infer pretext. Defendants are therefore entitled to summary judgment on her retaliation claim.

IV.

For these reasons, we AFFIRM.