NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0102n.06

Case No. 22-5638

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| RICHARD DEVORE, | ) | **FILED**<br>Feb 23, 2023<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| UNITED PARCEL SERVICE CO., | ) | |
| Defendant-Appellee. | ) | |
| | ) | O P I N I O N |

Before: SUHRHEINRICH, COLE, and MURPHY, Circuit Judges.

COLE, Circuit Judge. Richard DeVore, a longtime employee at United Parcel Service Co. (UPS), was terminated after violating a UPS policy, ostensibly by mistake. DeVore sued UPS, claiming that the real reason for his termination was retaliatory animus based on a request for leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–54. UPS moved for summary judgment on the basis that it had a legitimate, nondiscriminatory reason for DeVore's termination—namely, his error at work. The district court granted the motion, and DeVore appealed. We affirm.

## I. BACKGROUND

In May 2018, DeVore was working as a flight crew scheduler at UPS, where he had been employed for nearly thirty years. As of 2016, based on a Collective Bargaining Agreement (CBA) with the UPS pilots, UPS had a policy that flight schedulers could release pilots early from their

shift if appropriate based on workflow, but if the scheduler did so, he was required to document it so that the pilot's pay would be reduced accordingly.

In 2014, DeVore began suffering from medical problems related to his feet. By 2018, he had twice taken FMLA leave to receive and recover from foot surgeries. In or around March 2018, he reported to his supervisor, Jeff Johnston, that he would need to take time off from work again for another surgery, although he did not say when the surgery would be. DeVore and other employees testified about numerous issues with Johnston as a supervisor, describing him as unprofessional and, in effect, a bully who ribbed DeVore and other employees for their appearances, although no testimony linked these jibes to FMLA leave or other FMLA-protected activity.

During one shift in May 2018, DeVore received a call from a UPS pilot asking to be released early. DeVore agreed to do so. DeVore did not enter the code to reduce the pilot's pay; according to DeVore, he believed he had the discretion not to enter the code and instead allow the pilot to collect his full pay.

DeVore's higher-ups at UPS soon learned of his mistake while looking through the flight crew schedulers' call logs for information about an unrelated incident. They explained that DeVore violated UPS's "integrity policy" by failing to enter the pay-deduction code as required. UPS then terminated DeVore for falsifying documents and violating the integrity policy. In email correspondence between UPS supervisors, one supervisor stated that DeVore had "been told many of times [sic] not to do these types of things." (Emails, R. 54-15.) Additionally, another UPS employee previously reported DeVore to his immediate supervisor, Johnston, for adjusting another pilot's schedule without following protocols.

DeVore and other UPS employees testified that they were unaware of another employee being fired for this specific error. One employee stated that he had allowed pilots to keep their full day of pay despite being released early from shifts on numerous occasions and was never disciplined for it, although he also claimed that he was "terminated . . . under similar circumstances" relating to union activity. (Lynott Decl., R. 62-8, PageID 479–80.)

DeVore sued UPS in federal court for FMLA retaliation, arguing that his May 2018 termination was caused not by his coding error but by his request for FMLA leave two months earlier. UPS moved for summary judgment. The district court granted the motion. DeVore timely appealed.

## II. ANALYSIS

We review a grant of a motion for summary judgment de novo. *Walsh v. KDE Equine, LLC*, 56 F.4th 409, 416 (6th Cir. 2022). Summary judgment is appropriate only where—taking all evidence and reasonable inferences in favor of the non-movant—there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Sec'y of Labor v. Timberline South, LLC*, 925 F.3d 838, 843 (6th Cir. 2019); Fed. R. Civ. P. 56(a).

DeVore contends that his termination from UPS constituted unlawful retaliation under the FMLA, which prohibits employers from firing an employee who requests leave under the act. *See* 29 U.S.C. § 2615(a); *Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860, 866–67 (6th Cir. 2023) (holding that FMLA retaliation claims may arise under § 2615(a)(1) or § 2615(a)(2)).

With respect to FMLA retaliation claims on appeal from summary judgment, "we must determine whether, within the steps of the *McDonnell Douglas* framework, there are genuine disputes of material fact." *Marshall v. Rawlings Co., LLC*, 854 F.3d 368, 381 (6th Cir. 2017). At the first step of *McDonell Douglas*'s burden-shifting framework, DeVore must establish his prima

facie case by showing that (1) he engaged in FLMA-protected activity; (2) UPS knew of his FMLA activity; (3) after learning of the FMLA activity, UPS took an adverse action against him; and (4) there was a causal link between the FMLA activity and the adverse action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). Once DeVore makes his prima facie case, UPS must present a legitimate, nondiscriminatory reason for the adverse action—here, terminating his employment. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). Once UPS does so, DeVore's claim can survive only if he creates a genuine dispute of fact that UPS's proffered reason is pretextual. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007).

Here, even assuming DeVore has provided sufficient evidence to support his prima facie case, he fails to create a genuine dispute of material fact on the final *McDonell Douglas* step requiring a showing that UPS's rationale for terminating him was pretextual. A plaintiff can demonstrate pretext by putting forth evidence that "the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).

Regarding the first option, it is undisputed that DeVore's decision not to apply the pay-reduction code to reflect the pilot's time off work in May 2018 occurred and contradicted UPS policy. Turning to the second and third options, DeVore maintains that his evidence shows that UPS's decision to terminate him was motivated by his previous notice of FMLA leave and the policy violation was so minor that it was insufficient to warrant termination. DeVore emphasizes that his request for leave related to an upcoming but unscheduled surgery occurred two months before UPS terminated him. Even assuming that DeVore's March 2018 statement that he would need to go "out on disability"—untethered to any particular timeframe—gave notice of FMLA

activity, "the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext." *Donald*, 667 F.3d at 763 (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001)). Temporal proximity can support a finding of pretext when bundled with other corroborating evidence, *see Seeger*, 681 F.3d at 285, but DeVore lacks such supporting evidence.

DeVore points to testimony from other employees stating that they were unaware of someone else being terminated for the same error DeVore committed; that other, unnamed employees committed worse errors than DeVore without being fired; that Johnston, DeVore's supervisor, was a bully who insulted employees based on their appearances; and that UPS allegedly fired an employee several years before for engaging in union activity. But none of this testimony links DeVore's termination to his request for leave.

To start, to the extent that the UPS employees' testimonies intimate that unnamed individuals committed the same or worse errors without being fired, those statements are too speculative and unsupported by specific facts to defeat summary judgment. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). Moreover, that UPS did not usually fire people for the kind of error that DeVore committed does not provide a basis for finding pretext, particularly where the record reflects that UPS supervisors believed that DeVore had a history of similar errors and had already been warned that further disciplinary measures would ensue. *See Donald*, 667 F.3d at 763 ("Whether [an employer] followed its own protocol . . . provides neither us, nor a rational juror, with a basis to believe that [the employer's] decision was improper.") There is no indication that the other employees described in DeVore's submissions had a similar background or, indeed, were ever caught committing the error that DeVore made, making such comparisons inapt.

Similarly, although Johnston's comments to DeVore and other employees were inappropriate—even hurtful—nothing in the record links these insults to DeVore's request for FMLA leave, particularly where Johnston also lambasted other employees who did not request FMLA leave. The same is true of UPS's alleged termination of a different employee for union-related conduct; it simply does not support DeVore's argument that his termination was rooted in his request for FLMA leave, an entirely different sort of statutorily protected conduct. *See Norton v. LTCH*, 620 F. App'x 408, 412 (6th Cir. 2015) (citing *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015)) ("To show pretext, [a plaintiff] must show both that [an employer's] proffered reason was not the real reason it fired her and that the real reason was retaliation for protected activity under the FMLA.").

Unfortunately for DeVore, there is no evidence in the record that would allow a reasonable jury to conclude that UPS terminated him because of a request for FMLA leave.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of UPS.