NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0262n.06

Case No. 22-3800

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 08, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| REBECA SANTIAGO, | ) |
| Plaintiff-Appellant, | ) ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE SOUTHERN |
| | ) DISTRICT OF OHIO |
| MEYER TOOL INCORPORATED, et al., | ) |
| | ) OPINION |
| Defendants-Appellees. | ) |

Before: COLE, READLER, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Plaintiff-Appellant Rebeca Santiago worked at Meyer Tool Incorporated ("Meyer Tool") for 19 years before the company terminated her employment in 2017. After her termination, she sued Meyer Tool, Edwin Finn, her direct supervisor, and Deanna Adams, the company's Human Resources Director (collectively, "Defendants"), asserting claims under the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), the Equal Pay Act ("EPA"), and various Ohio state laws. The parties filed cross motions for summary judgment, and the district court denied Plaintiff's motion and granted Defendants' motion as to all federal claims and some state law claims. The court declined to exercise supplemental jurisdiction over Santiago's remaining state law claims, dismissing them without prejudice. Santiago now appeals the district court's decision. For the reasons stated below, we AFFIRM.

## I.

Meyer Tool is an international, Ohio-headquartered manufacturing company that supplies precision components used in turbine engines for military and commercial jet planes. Santiago's employment with Meyer Tool spanned from 1998 until 2017. She initially joined the company as a parts inspector, and shortly after, became a machinist. Throughout her time as a machinist, Edwin Finn was Santiago's direct supervisor. As a machinist, Santiago operated a Conventional Electrical Discharging Machining Tool ("EDM"), which uses electrodes to burn precise holes in turbine parts. The result of deviating from the EDM operating process—which is incorporated into an operations sheet provided to operators—is producing a deviated part. When a part is deviated, Meyer Tool reports the issue to the intended client, and the client determines whether it will accept the part.

In 2014, Santiago was diagnosed with human immunodeficiency virus ("HIV"). Santiago spoke with a Human Resources employee about her need to take time off for her medical condition. Santiago received approval to take intermittent disability leave under the FMLA from June 15, 2016 through December 15, 2016 and from January 5, 2017 through July 5, 2017. In August 2015, Santiago sent an email to Finn disclosing her HIV diagnosis. Once Santiago returned from FMLA leave, Finn began to highly scrutinize her work and complain about her taking time off.

Meyer Tool maintained an employee handbook which contained various company policies, including those addressing leave and time off, punctuality and attendance, performance and training, and complaint procedures. In the Performance and Training section, the handbook stipulated that non-workplace behavior violations of the handbook would lead to "verbal, written, and/or final warnings before termination of employment results." It provided that "[i]t is within Meyer Tool's sole discretion to determine the appropriate action, corrective or otherwise, in any

given situation." And notably, the handbook flagged for employees that "[p]oor job performance will lead to discipline, up to and including termination."

As for attendance, the handbook set out a system whereby employees would accumulate points based on unexcused absences, tardies, or early departures for a rolling twelve-month period. For example, one unexcused absence would result in one cumulative point. The policy also specified the discipline that corresponded with accrual; five points led to verbal counseling, seven points—a written warning, eight points—three days' unpaid suspension, nine points—a letter explaining the attendance policy and reminding employees that they would be subject to termination review upon reaching ten points, and ten points—termination pending review. The handbook further explained that disciplinary action stemming from attendance violations would be considered separately from other forms of disciplinary action related to job performance, but that "multiple occurrences regarding both attendance and work performance or behavior" may result in termination if the employee "has been suspended on both accounts." Even so, the handbook warned employees that "[f]ailure to report for work or failure to notify the supervisor may warrant termination of employment without notice." Meyer Tool required all employees to sign an acknowledgement form indicating their understanding that "continued employment is contingent on following the policies contained in the Employee Handbook." Santiago signed the form.

During her time at Meyer Tool, Santiago violated and was disciplined for a number of employee handbook violations. She received disciplinary action for attendance policy violations in July 2014, October 2014, twice in April 2016, twice in June 2016, and in February, March, and June 2017. For her violations, Santiago received two verbal warnings, four written warnings, two three-day unpaid suspensions, and a 9-point letter. Her final suspension took place from June 27

to 29, 2017, less than one month before Meyer Tool terminated her employment. Meyer Tool's attendance tracking system required employees taking FMLA leave to identify absences, tardies, or early departures that were covered by the FMLA. Santiago did not identify any occurrences leading to her violations as FMLA-related.

Santiago also violated the company's Performance and Training Policy in 1999, 2002, and twice in 2012. These violations resulted in two verbal warnings, one written warning, and one three-day unpaid suspension, respectively. Meyer Tool's files also show that Santiago produced deviated parts on February 1 and 8, 2017, but that she received no disciplinary action for either deviation. Santiago's final violation of the performance policy occurred in May 2017, when she produced four deviated parts. Meyer Tool terminated Santiago's employment on July 20, 2017. The intended client ultimately rejected all four deviated parts after Santiago's termination.

Following her termination Santiago filed a questionnaire with the Equal Employment Opportunity Commission ("EEOC") in October 2017. On the questionnaire, Santiago asserted that (1) she is disabled in that she is positive for HIV; (2) she informed HR and her supervisor, Edwin Finn, of her disability; (3) she was terminated by Finn for deviated parts; and (4) many individuals "deviated dozens of parts and still work [at Meyer Tool] after many years."

A week later, Santiago filed her first charge with the EEOC. She alleged that (1) she has a disability; (2) she was approved to take disability leave; (3) upon her return from leave, Finn highly scrutinized her work; (4) Finn informed her that she was discharged for producing non-conforming parts; (5) she is aware that co-workers have produced non-conforming parts and were retained.

In July 2018, 358 days after her termination, Santiago filed a second charge with the EEOC. In the second charge, she alleged gender discrimination on the basis of sex in violation of Title VII

and the EPA.  Santiago claimed that Finn sexually harassed her throughout her tenure at Meyer Tool.  She further alleged that Meyer Tool paid her less than male machinists, assigned her less-desirable shifts and assignments, and blamed her for other workers' errors.  She again asserted that she was terminated by Finn due to her disability.

Santiago subsequently received two right-to-sue letters from the EEOC and brought suit in district court.  After filing their Answer to Santiago's original Complaint, Defendants moved for Judgment on the Pleadings as to Santiago's Title VII claims, arguing that she failed to exhaust her administrative remedies by not timely filing her second charge within Title VII's requisite 300-day window.  The court adopted a magistrate judge's Report and Recommendation, which recommended granting Defendants' motion in its entirety, thereby dismissing that claim.

In an amended complaint, Santiago alleged the following eleven causes of action: (1) gender discrimination in violation of Ohio Rev. Code § 4112.01, *et seq.*; (2) disability/perceived disability discrimination in violation of the ADA, 42 U.S.C. § 12112; (3) disability discrimination in violation of Ohio Rev. Code § 4112.02; (4) gender-based pay discrimination in violation of the EPA, 29 U.S.C. § 206(d)(1); (5) wrongful termination in violation of Ohio Public Policy; (6) gender-based pay discrimination in violation of Ohio Rev. Code § 4111.17; (7) retaliation in violation of the FMLA, 29 U.S.C. § 2601, *et seq.*; (8) negligent retention and supervision; (9) defamation by slander; (10) hostile work environment based on gender, disability, and perceived disability in violation of Ohio Rev. Code §§ 4112.02(A) and 4112.99; and (11) hostile work environment based on disability and/or perceived disability in violation of the ADA.

The parties filed cross motions for summary judgment.  The district court denied Santiago's motion in its entirety, and granted in part and denied in part Defendants' motion.  *Santiago v.*

*Meyer Tool Inc.*, No. 1:19-CV-032, 2022 WL 3908954, at \*12 (S.D. Ohio Aug. 30, 2022). The court dismissed, with prejudice, Santiago's claims of disability discrimination in violation of the ADA and Ohio law, FMLA retaliation, gender-based pay discrimination in violation of the EPA and Ohio law, and hostile work environment in violation of the ADA. *Id.*

As to Santiago's claims for both federal and state disability discrimination and FMLA retaliation, the district court assumed that Santiago established a prima facie case, but concluded that Defendants had a legitimate, nondiscriminatory and nonretaliatory reason for her termination. The court also found that Santiago failed to establish that Defendants' reasons were pretextual and failed to establish a prima facie case of wage discrimination. Finally, the court determined that Santiago did not administratively exhaust her hostile work environment claims before the EEOC.

The court declined to exercise supplemental jurisdiction over Santiago's remaining state law claims, dismissing them without prejudice. *See* 28 U.S.C. § 1367(c)(3). This appeal followed.

## II.

We review a district court's grant of summary judgment *de novo*. *Romans v. Mich. Dept. of Hum. Servs.*, 668 F.3d 826, 835 (6th Cir. 2012) (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 894 (6th Cir. 2004)). Summary judgment is warranted when there exists no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (quoting Fed. R. Civ. P. 56(a)). There exists a genuine dispute of material fact if there is sufficient evidence for a trier of fact to find for Santiago. *See Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016). In ruling, we draw all reasonable inferences in Santiago's favor as the non-moving party. *See Romans*, 668 F.3d at 835.

**III.**

Santiago asserts that the district court erred in granting Defendants' Motion for Summary Judgment. Specifically, she argues that (1) Defendants failed to show a legitimate, nondiscriminatory, nonretaliatory reason for terminating her and, regardless, the reasons offered were pretexts for disability discrimination and FMLA retaliation; (2) she successfully established a prima facie case of wage discrimination; and (3) she adequately exhausted her administrative remedies, permitting her to pursue her claims for hostile work environment in violation of the ADA. We take each claim in turn.

A. ADA and FMLA Claims

Absent direct evidence of ADA disability discrimination or FMLA retaliation, as here, we analyze each of these claims using the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703, 707 (6th Cir. 2008) (applying the burden-shifting framework to ADA discrimination and FMLA retaliation claims).

Under the *McDonnell Douglas* framework, Santiago bears the initial burden of establishing a prima facie case of discrimination on account of her disability, and of retaliation for her use of FMLA leave. *See McDonnell Douglas*, 411 U.S. at 802. For purposes of this appeal we assume, as the district court did, that Santiago has established a prima facie case for both ADA discrimination and FMLA retaliation.

The burden thus shifts to Defendants to articulate a legitimate, nondiscriminatory, nonretaliatory reason for their actions. *See id.* If successful, the burden then reverts to Santiago, who must show by a preponderance of the evidence that the proffered reasoning is mere pretext for discrimination or retaliation. *Id.* at 804.

Because we apply the same analysis after the prima facie showing, and because Santiago generally discusses the facts without specific application to the individual legal claims, we address these claims together.

i.    Legitimate, Nondiscriminatory, Nonretaliatory Reason for Termination

Santiago first asserts that Defendants have not presented a legitimate, nondiscriminatory and nonretaliatory reason for her termination.  Defendants' burden here is quite low; it is only "one of production, not persuasion," and we make "no credibility assessment."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

Meyer Tool says that it terminated Santiago because of her "repeated failure to follow Meyer Tool policy and her substandard work product."  As evidence supporting the legitimacy of its reasons, the company presented its employee handbook and records of Santiago's violations. The district court correctly determined that Defendants satisfied their burden.

We have held on many occasions that the violation of a wide variety of an employer's articulated policies constitutes a legitimate, nondiscriminatory reason for adverse employment actions.  *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 327 (6th Cir. 2021) (termination for insubordination in violation of policy); *Chattman v. Toho Tenax America, Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (final written warning for horseplay in violation of safety policy); *Cartwright v. Lockheed Martin Util. Servs., Inc.*, 40 F. App'x 147, 155 (6th Cir. 2002) (sleeping during break against policy).  Indeed, it is well-established that no formal policy at all is required for an employer to clear the low burden associated with this particular showing.  *See, e.g.*, *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 246 (6th Cir. 1997) (termination for "negative attitude and lack of interest in the company's future" constituted legitimate reason).  The salient consideration is whether Defendants' stated reason is discriminatory, or retaliatory.  It is not.

The parties quibble about whether the district court misapplied the holding in *Schwendeman v. Marietta City Schs.*, 436 F. Supp. 3d 1045 (S.D. Ohio 2020). But *Schwendeman* is binding on neither this court nor the court below. And even if it were, it is consistent with the precedential authorities discussed above so the district court did not err in according it persuasive value. The *Schwendeman* court found that an employee's violation of company policies prohibiting the falsification of leave and falsification of benefits, constituted legitimate, nondiscriminatory reasons for termination, as did dishonesty alone. *Schwendeman*, 436 F. Supp 3d at 1061. Santiago argues that because the policy violations Meyer Tool has articulated did not involve allegations of her lying or falsifying leave or benefits, the stated reasons are insufficient. But the reasons discussed in *Schwendeman* are not exhaustive. As noted above, we have accepted violation of company policies addressing a range of workplace behaviors as legitimate, nondiscriminatory reasons for dismissal. Nothing in this record suggests that Meyer Tool's attendance and product quality policies should be denied the same acceptance.

Santiago's arguments to the contrary appear to conflate this determination with whether Defendants' stated reasons were pretextual. We proceed with that analysis.

### ii. Pretext

Defendants having produced legitimate, nondiscriminatory and nonretaliatory reasons for her termination, the burden shifts back to Santiago to establish that Defendants' stated reasons were merely pretextual. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012). Santiago can show pretext by demonstrating that the stated reasons (1) have no basis in fact, (2) did not actually motivate her termination, or (3) were insufficient to motivate her termination. *Id.* Ultimately, the overarching question is simply whether Santiago produced evidence sufficient for a jury to "reasonably reject [Meyer Tool's] explanation of why it fired her." *Chen v. Dow Chem.*

*Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Notably, "[a]lthough a plaintiff need not always 'produce additional evidence to support a finding of pretext[,]' if the plaintiff points to evidence that she already presented, it must specifically rebut the employer's proffered legitimate, nondiscriminatory reason." *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 85 (6th Cir. 2020) (citation omitted). Santiago argues that all three paths support a finding of pretext.

Santiago cannot prevail under the first showing, where we simply inquire whether the proffered bases for her discharge actually happened. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). Santiago maintains that Defendants' allegations that she repeatedly failed to follow company policy and produced substandard work are "completely unfounded and belied by the evidence in the record." To support her argument as to performance, Santiago points us to her own affidavit, where she stated that she "often trained new machinists and got them familiar with the assigned duties." But this statement has no bearing on the undisputed fact that she deviated four parts prior to her termination.

With respect to attendance violations, Santiago asserts that she was approved to take intermittent FMLA leave and that she never missed work without calling in first. In support of this assertion, Santiago points to deposition testimony of HR employee JoAnne Poff, who explained that Meyer Tool approved Santiago for intermittent FMLA leave from January 5, 2017 to July 5, 2017, a fact that Defendants do not dispute. But this ignores Poff's testimony and related documentary evidence indicating that Santiago eventually exceeded the hours allotted for her FMLA leave. Meyer Tool records further reflect that Santiago did not identify any of her tardies or absences that resulted in policy violations as FMLA-related. And regarding her assertion that she always called before missing work, Santiago points only to her own deposition testimony

stating as much. But when given an opportunity to provide written comments on the warning reports that accompanied each disciplinary action, Santiago declined. What's more, Santiago admitted during her deposition that, at the time she received discipline for failing to follow call-off procedures, she likely would have had her call records available to simply show that she had called in, but did not do so. Construing these facts in the light most favorable to her, Santiago has not come forward with evidence sufficient to create a triable issue of fact as to whether her policy violations actually occurred.

Next, Santiago's arguments that Defendants' proffered reasons for her termination "did not actually motivate" the discharge mount an indirect attack on the employer's articulated reasons for termination. *See Manzer*, 29 F.3d at 1084. Using this approach, Santiago can "attempt[] to indict the credibility of [her] employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." *Id.* "In other words, [Santiago] argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.*

Santiago points to the statistical analysis performed by her expert Dr. Rebecca Fang for support. In her analysis, Dr. Fang concludes that employees taking FMLA leave at Meyer Tool were more likely to be terminated than those not taking FMLA leave, and that between 2014 and 2017, all six machinists who took FMLA leave were terminated. Based on Dr. Fang's analysis, Santiago urges the conclusion that her own termination was more likely than not due to her FMLA leave. While Santiago's statistical evidence may have sufficed to make a prima facie showing of FMLA retaliation at the summary judgment stage, it is not sufficient on its own to show pretext here. *See Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1468-69 (6th Cir. 1990); *cf. Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 437-38 (6th Cir. 2002).

In *Barnes*, we explained that "[a]ppropriate statistical data showing an employer's pattern of conduct toward a protected class as a group can, *if unrebutted*, create an inference that a defendant discriminated against individual members of the class." 896 F.2d at 1466 (emphasis added). When a plaintiff offers statistics showing "a disproportionate discharge rate for a protected group there are three possible explanations for the discrepancy: the operation of legitimate selection criteria, chance, or the defendant's bias." *Id.* at 1468. Where the statistics indicate a significant statistical disparity, there is strong evidence that chance is not to blame. *Id.* at 1468-69.

But one way for Defendants to attack Santiago's prima facie case established by statistics is by demonstrating that "even if [Santiago's] statistics and the court's assumption tend to indicate that bias could have played a role in some of the decisions, that bias did not play a role in the particular decision to discharge" Santiago. *Id.* at 1469. In *Barnes*, the defendants successfully rebutted statistical evidence by presenting their own evidence that the terminated plaintiffs were less qualified than others occupying comparable positions, thereby "undercut[ting] the importance of the plaintiffs' statistical proof." *Id.* So too here, where Defendants have come forward with evidence that Santiago repeatedly violated company policies for which she received progressive discipline. That is, because the statistics themselves do not establish that Santiago's FMLA leave more likely than not played a factor in *her* termination decision, they cannot carry her burden at the pretext stage. *See id.* ("This method of attacking a statistical prima facie case cannot be rebutted by reference to the statistics already presented since the statistics here do not tend to establish that age played a factor in any *particular* decision.").

On the other hand, in *Hopson*, we relied on *Barnes* to hold that significant statistical evidence, *when coupled with* "independent circumstantial evidence" can suffice to show that a

statistical disparity is more likely than not due to the defendant's bias, and that the defendant is not entitled to summary judgment. *Hopson*, 306 F.3d at 437-38. The "independent circumstantial evidence" in *Hopson* included, in part, testimony of a manager that the plaintiff's race was a factor in the company's decision not to hire him for certain jobs. *Id.* at 437. Santiago points to no such additional circumstantial evidence. Her statistical evidence, standing alone, is not so significant to indicate that *her* termination was *more likely* than not retaliation for her FMLA leave, particularly in light of her documented disciplinary history.

This leaves the third path—that Meyer Tool's reasons were insufficient to motivate the discharge. This is essentially an argument that the stated reasons for termination *could not* have motivated dismissal. *See Manzer*, 29 F.3d at 1084. Here, Santiago "must show by a preponderance of the evidence that 'other employees, particularly employees not in the protected class, were not fired even though they were engaged in *substantially identical conduct* to that which the employer contends motivated its discharge.'" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286-87 (6th Cir. 2012) (quoting *Manzer*, 29 F.3d at 1084) (emphasis added).

Santiago cannot meet her burden here because she has failed to identify retained employees "not in [her] protected class" with whom she is "similar in all of the *relevant* aspects." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 378-79 (6th Cir. 2002) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). We have explained that in order for employees to be considered similarly situated, we look to factors such as whether they "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich*, 154 F.3d at 352 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). However, we clarified in *Ercegovich* that the

inquiry is not to be applied mechanically. *Id.* at 352-53. Rather, what makes a plaintiff "similarly situated [to the non-protected employee] in all relevant respects" is fact-sensitive and to be determined on a case-by-case basis. *Id.*

Applying these standards, Santiago's evidence of retained Meyer Tool employees precludes meaningful comparison. First, she points to no employee with a disciplinary record that demonstrates the employee engaged in "substantially identical conduct" to her own. *Blizzard*, 698 F.3d at 286-87 (quoting *Manzer*, 29 F.3d at 1084). In the district court and on appeal, Santiago highlights employee Ruth Clark, a machinist also supervised by Finn who produced deviated parts and whom Finn suspended for three days before permitting her to return to work. But as the district court explained, Santiago offers no evidence about Clark's violation of other Meyer Tool policies—particularly the attendance policy which Santiago was found to have violated—thus rendering her an inappropriate comparator for the purposes of pretext.

Santiago accuses the district court of only focusing on Ruth Clark and ignoring "evidence in the record of numerous male machinists who produced large quantities of defective parts and were not terminated." But it is on appeal that Santiago has directed the court's attention to this slew of nine new individuals. We generally decline to entertain factual recitations not brought to the district court's attention in the first instance. *See Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 995 (6th Cir. 2007) ("[T]he opposing party 'has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.'" (quoting *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001))); *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 490 (6th Cir. 2017) ("We have said time and again, district courts cannot be expected to dig through the record to find the seeds of a party's cause of action."). Even were we to consider Santiago's newly-augmented argument, it would still fail as none of her

examples includes any individual with attendance policy violations as severe as her own in addition to their performance violations. Further, Santiago provides no information describing discipline or termination decisions, such as who the decisionmakers were, what types of parts the employees produced, or what level of skill and difficulty their jobs required. In fact, Santiago ignores testimony from the very same deposition that she cites to support her comparator evidence, in which former Vice President of Operations Gordon McGuire explains that several of the referenced employees were responsible for producing "delicate parts" or parts that were being developed for the first time where deviations were expected or far more common. The record (and Santiago) appears otherwise silent as to what types of parts the remainder of the comparators were responsible for producing. And McGuire's testimony as well as Meyer Tool's employee files indicate that the newly-proffered employees were not supervised or disciplined by Finn. *See Kinch v. Pinnacle Foods Grp., LLC*, 758 F. App'x 473, 479 (6th Cir. 2018) ("If different supervisors treat different employees with different responsibilities differently for the same conduct, it doesn't follow that discrimination motived the disparate treatment."). Moreover, while she repeatedly highlights that the nine newly-referenced employees are all male, Santiago makes no mention of whether any of them, or Clark, (1) were outside of her protected class for purposes of the ADA, or (2) had not engaged in protected activity for purposes of the FMLA. *See Keogh v. Concentra Health Servs., Inc.*, 752 F. App'x 316, 324-25 (6th Cir. 2018) (declining to find pretext where "plaintiff cite[d] no evidence that any similarly situated, nondisabled employee with a disciplinary record as voluminous as his was treated differently"); *Norton v. LTCH*, 620 F. App'x 408, 412 n.2 (6th Cir. 2015) (considering whether proffered comparator employee had not taken FMLA leave for purposes of FMLA retaliation pretext analysis); *see also Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 952 (7th Cir. 2006) (finding comparators inadequate where "[plaintiff] fail[ed] to present

any evidence on the critical independent variable here: FMLA leave (*i.e.,* which comparators did (or did not) take FMLA leave)."). Santiago's evidence of purportedly similarly situated employees, on the whole, is insufficient to establish that Defendants' reasons for her termination were pretextual.

As to her last argument that Defendants' stated reasons were insufficient to result in her termination, Santiago asserts that based on her expert's analysis, "there was no statistical evidence showing that Ms. Santiago was terminated by Meyer for producing rejected/non-conforming parts only," and that Santiago herself "had never seen a machinist be terminated for 'bad' or 'nonconforming' parts." Santiago's firsthand knowledge is of little use since there is no reason to assume that she would have knowledge of every employee's departure from the company or reason for the same during the relevant period. Meyer Tool's disciplinary records, in contrast, establish that the company had indeed terminated employees for producing nonconforming parts and for poor work quality. Moreover, both of these arguments continue to downplay Santiago's extensive attendance policy violations, including a suspension for such violations within a month of her eventual termination. The court sees no reason to overlook these violations.

Because Santiago has not presented evidence upon which a reasonable jury could find that Defendants' reasons for her termination were pretextual, we affirm the district court's determination.

### B. Wage Discrimination

Santiago next asserts that, contrary to the district court's finding, she made out a prima facie case for wage discrimination under the Equal Pay Act, 29 U.S.C. § 206(d), and Ohio's analogous law, Ohio Rev. Code § 4111.17. Both laws prohibit covered employers from paying an employee of one sex at a lesser rate than an employee of the opposite sex for equal work. 29 U.S.C.

§ 206(d)(1); Ohio Rev. Code § 4111.17(A). We analyze claims brought pursuant to the federal and state law under the same standards. *Birch v. Cuyahoga Cnty. Prob. Ct.*, 392 F.3d 151, 161 n.6 (6th Cir. 2004).

To establish a prima facie case of wage discrimination, Santiago is required to show that Meyer Tool paid male employees different wages for equal work, for jobs that required equal skill, effort, and responsibility, and that were performed under similar working conditions. *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 507-08 (6th Cir. 2021). We note that "equal work" does not require the jobs themselves to have been identical. *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006). But "[i]n determining whether a comparator is appropriate for the purposes of an EPA claim, our focus is on actual job requirements and duties, rather than job classifications or titles." *Id.* at 362 (citing *Brennan v. Owensboro-Daviess Cnty. Hosp.*, 523 F.2d 1013, 1017 & n.7 (6th Cir. 1975)). In *Conti v. Universal Enterprises, Inc.*, we affirmed the grant of summary judgment after finding that the plaintiff "ha[d] not come forward with evidence to show the specific duties and responsibilities of the positions held by [male comparators] and whether those jobs and [plaintiff's] job required 'equal skill, effort, and responsibility' and were 'performed under similar working conditions.'" 50 F. App'x 690, 697 (6th Cir. 2002). There, the plaintiff had "made only a conclusory allegation on appeal that her 'job duties were substantially equal to those of comparable male employees that were paid significantly more.'" *Id.*

Santiago's evidence similarly falls short. In support of her wage discrimination claims, Santiago presents her expert's statistical analysis finding that male machinists were paid more, on average, than female machinists. She also highlights that male employees hired in or around the same year as her have received a higher average annual raise, year over year. Using this evidence, she proclaims that "[d]uring the entire time she was employed by Meyer Tool, [she] was paid less

than comparable male machinists, including those trained by [her] and having much less experience." But despite this assertion, we cannot simply take Santiago's word for it; she offers no evidence about the respective skill, effort, and responsibility possessed by the male comparators she names. Evidence that the higher-paid male employees were also classified as machinists or that they have been employed at Meyer Tool for less time than Santiago does not adequately speak to their job requirements and duties, and leaves the court with insufficient information to conduct meaningful comparison. Nor does Santiago's statement that she has trained several higher-paid male employees facilitate comparison without evidence that this fact somehow speaks to the skill, effort, and responsibility of their respective positions. Thus, the district court correctly concluded that Santiago failed to make out a prima facie case of wage discrimination.

## C. Hostile Work Environment - ADA

Lastly, Santiago challenges the district court's finding that she did not administratively exhaust her ADA claim of hostile work environment due to her disability. Before suing an employer under the ADA, an employee must first timely file a charge with the EEOC. 42 U.S.C. § 12117(a) (incorporating the charging requirements of Title VII, 42 U.S.C. § 2000e-5(e)); *Russ v. Memphis Light Gas & Water Div.*, 720 F. App'x 229, 236 (6th Cir. 2017). "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (quoting 29 C.F.R. § 1601.12(b)). Only those claims that were initially presented to the EEOC are considered administratively exhausted. This rule's purpose is twofold: it gives the employer information regarding the employee's complaint, and it provides both the EEOC and the employer an opportunity to attempt reconciliation. *See id.* at 361-62.

Nonetheless, in recognition of the fact that many employees file charges on a *pro se* basis, the court construes the charge liberally and considers claims that are "reasonably related to or grow out of the factual allegations in the EEOC charge." *Id.* at 362. A claim is "reasonably related" to an EEOC charge when it falls within the scope of that charge or includes language that "would have put the EEOC or the employer on notice that [the employee] was alleging" that claim. *Id.* at 363; *see Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) ("[W]here facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim."). A hostile work environment exists where there is "harassment that 'unreasonably interferes with [an employee's] work performance and creates an objectively intimidating, hostile, or offensive work environment." *Younis*, 610 F.3d at 362 (quoting *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008)).

In her questionnaire, Santiago checked boxes indicating that she has a disability, that she told her boss about her disability, and that she was told she was terminated due to poor performance, but that other employees had deviated parts and still worked at Meyer Tool.[1] Then, in her first charge, Santiago stated the following:

I.      I have a disability. I was approved to take disability related leave. After 19 years of employment and returning from leave my work was highly scrutinized by Supervisor Edwin Finn. On July 20, 2017, Supervisor Finn informed me I was discharged for producing non-confirming [sic] parts. I am aware that co-worker Ruth Clark and others have produced non-confirming [sic] parts and were retained.

II.     Supervisor Edwin Finn is responsible for the above discriminatory actions.

---

[1] Because Santiago's second charge before the EEOC was untimely, only the contents of her first charge and her EEOC questionnaire were properly before the district court for purposes of this exhaustion analysis. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a)*; see also Santiago*, 2022 WL 3908954 at *10 n.1 (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000)).

III.    I believe I have been discriminated against in violation of the Americans with Disabilities Act 1990, as amended.

The district court found that the allegations included in the questionnaire and the first charge of discrimination were not "reasonably related" to a claim for hostile work environment under the ADA. We agree.

In her charge, Santiago does not set forth any facts indicating that Finn's alleged scrutiny had any effect on her performance or work environment such that it rose to the level of a hostile work environment. Instead, the alleged scrutiny is fairly read to relate only to Santiago's ultimate termination. Also of note, although not dispositive, Santiago did not indicate that the discrimination was a continuing action, but instead identified the date of discrimination as July 20, 2017, the date of her termination. *See Younis*, 610 F.3d at 362. Taken altogether, neither the EEOC nor Defendants reasonably could have anticipated Santiago's EEOC Charge to be alleging a hostile work environment. It therefore follows that the district court did not err in granting summary judgment on this claim.

## IV.

For the foregoing reasons, we AFFIRM the district court's order granting Defendants' Motion for Summary Judgment.